TABLE OF CITATIONS

PAGE

Abbot v. Am. Cyanamid Co., 844 F.2d 1108, 1113 (4th Cir. 1988)          19


ADA. Doe v. County of Centre, Pa 242 F. 3d 437, 447-448

(3rd Cir. 2001).          9


Anderson v. Little League Baseball, Inc.
794 F. Supp 342, 346 ( D. Ariz. 1992)          2,14


Bangerter v. Orem City Corporation, 46 F.3d 1491,
1503 (10th Cir. 1995).          21


Barber v. Colorado
Dept. of Revenue, 562 F.3d 1222 (10th Cir. 2009)          18

Bragdon v. Abbott, 524 U. S. 624(1998)          4,7,12,16,18

See also Bruce v. City of Gainesville, Ga.,
177 F.3d 949, 951 (11th Cir. 1999)          3

Castelan v. Universal Studios Inc,
2014 WL 210754 (C.D. Cal . Jan.10, 2014)          22

Caruso v. Blockbuster-Sony Music,193 F.3d 730 (3rd Cir. 1999)          4

Chevron , U.S.A. Inc. v. Echazabal, 536 U.S. 73 (2002)          11

Doe v. Deer Mount Air Day Camp, 682 F. Supp. 2d 324,
47 (S.D. N.Y. 2010)          11

Equal Rights Ctr. v. Niles Bolton Assocs.,
602 F 3d. 597 (4th Cir. Md 2010)          20

Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S.
Ct. 1483, 131 L. Ed. 2d 385 (1995)          19

Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505
U.S. 88, 103, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992)          19

Geier v. Am. Honda Motor Co., 529 U.S. 861, 120 S. Ct.
1913, 146 L. Ed. 2d 914 (2000)                                    19

International Union, United Automobile Aerospace
and Agricultural Implement Workers of America,
UAW v. Johnson Controls, Inc., 499 U.S. 187, 197-200,
[*955]  111 S. Ct. 1196, 113 L. Ed. 2d 158 (1991);               21

Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.
Ct. 399, 85 L. Ed. 581 (1941))                                   19

Holiday v. City of Chattanooga, 206 F.3d 637, 643
(6th Cir. 2000)                                                   9

Larkin v. State of Michigan Department of Social Services,
89 F.3d 285, 290-92 (6th Cir. 1996).                             19

Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061,
1066 (9th Cir. 2007).                                           4,11

Holiday v. City of Chattanooga, 206 F.3d 637,
643 (6th Cir. 2000)                                               6

Oconomowoc Residential Programs v. City of Greenfield,
23 F. Supp. 2d 941, 954-955 (E.D. Wis. 1998)
(emphasis added).                                                19

School Board of Nassau County v. Airline                          5

Shultz By and Through Shultz v. Hemet Youth
Pony League, Inc.,943 F. Supp. 1222, 1225 (C.D. Cal. 1996).      10

Silkwood v. Kerr-Mcgee Corp., 464 U.S.
238, 104 S. Ct. 615, 78 L. Ed. 2nd 443 ( U.S. 1984).            19

Stoney v. Maple Shade, 426 N.J. Super 297 ( App.Div.2012).

Walker v. Guiffre, 200 N.J. 124, 156 (2012)                     1,3

Walker v. Crigler, 976 F.2d 900, 904
(4th Cir. 1992).                                                 20

INRODUCTION

This suit is a private action brought by a 16 old disabled has four limb congenital deficiencies Joseph Masci has two full legs but is missing both of the upper sections of his foot and toes part. His legs are functional. On his left arm he has a full arm but a malformed hand. He has a solid grip. He uses two prosthetic legs and also a prosthetic arm. Six Flags unlike Disney and Universal which has no such policy of exclusion as denied him the joy of riding all rides but two throughout its theme park. Six Flags did not base this decision on any objective engineering evidence but upon a general sense of a threat and a mischaracterization of a manufacturer of six of its forty sum rides. This discrimination is in violation of well-established state and federal access laws. Joseph Masci seeks  injunctive relief under the LAD and ADA and damages under the LAD. Stoney v. Maple Shade, 426 N.J. Super 297 ( App.Div.2012). In <u>Walker v. Guiffre, 200 N.J. 124, 156 (2012)</u> in a LAD claim the Court explained "Her obligation served not her sole interests, but the interests of any and all who had been or who might otherwise in the future have been denied access to the premises. The relief sought both because it was equitable in nature and because it was designed to serve a broad social purpose weighs in favor of a liberal interpretation of the law.

3

It would be wise to review the purposes of the access laws. First, the laws are about opportunity, as former Speaker of the House Gingrich has stated, "Mr. Chairman, throughout our history, our disabled citizens have not been provided the opportunity to participate in all phases of society. Designed to provide 43,000,000 Americans with enhanced opportunities, this bill, then, embodies the conservative idea of opportunity."136 Cong. Rec. H2631 (daily ed. May 22, 1990) (Statement of Rep. Gingrich).

Second, the law is to end segregation. As Senator Kennedy stated, "The Americans with Disabilities Act will end this American apartheid. It will roll back the unthinking and unacceptable practices by which disabled Americans today are segregated, excluded, and fenced off from fair participation in our society by mindless biased attitudes and senseless physical barriers.  135 Cong. Rec. 54993 (daily ed. May 09, 1989) (Statement of Sen. Kennedy). As Senator Dole said "Living independently and with dignity means opportunity to participate fully in every activity of daily life."  136 Cong. Rec. S9695 (daily ed. July 13, 1990)(Statement of Sen. Dole).

As a Federal Judge discussing discrimination by the Little League wrote,  <u>Anderson v. Little League Baseball, Inc, 794 F. Supp 342, 346 (D. Ariz. 1992)</u>

> U.S.Code Cong. & Admin. News 4, 267, 316. "The extent of non-participation of individuals with disabilities in social and recreational activities is alarming." Id. (quoting National

Council on Disability, Implications for Federal Policy of the 1986 Harris Survey of Americans with Disabilities, p. 37). The United States Attorney General has stated that we must bring Americans with disabilities into the mainstream of society "in other words, full participation in and access to all aspects of society." H.R. No. 101-485(II) at 35, U.S. Code Cong. & Admin. News 1978, p. 317.

As Judge Henderson explained:

"There can be no question that the Americans With Disabilities Act… established as law the nation's interest in eradicating the bigotry and barriers faced by individuals with disabilities… the ADA states its first goal as being "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. *"See* 42 U.S.C. 12101(b)(1) (1999). The ADA creates the possibility that successful plaintiffs may establish permanent changes in the design and physical configuration of structures to better accommodate the disabled… The benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of "private attorneys general" who seek to vindicate "a policy" of the highest priority.'" … *See also Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 951 (11th Cir. 1999) (discussing ADA plaintiffs as private attorneys general)… For example, successful ADA plaintiffs confer a tremendous benefit upon our society at large, in addition to the attainment of redress for their personal individual injuries.

New Jersey has greatly exceeded federal law by providing for damages and a multiplier of attorney fees. Walker v. Guiffr, 200 N.J. 124, 156 (2012). New Jersey provides greater. Justice Stevens has written:

"New Jersey prides itself on judging each individual by his or her merits and on being in the vanguard in the fight to eradicate the cancer of unlawful discrimination of all types from our society."… In its "exercise of this high power" today, the Court does not accord this "courageous state" the respect it is due. <u>Boy Scouts of America  530 U.S. 640 (2000)</u>

It is undisputed that the Six Flags discriminates against Joseph Masci by denying the ability to use its amusement rides unlike other teenagers. Six flags justifies this discrimination for some subjective view of safety not based on any objective engineering or scientific method in violation of long held precedent and the regulatory scheme of the ADA and LAD. Chevron, U.S.A. Inc. v. Echazabal, 536 U.S. 73 (2002), <u>Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1066 (9th Cir. 2007).</u>

Justice Kennedy for the Court in the landmark <u>Bragdon v. Abbott, 524 U. S. 624(1998)</u> issued a strong opinion criticized this type of discrimination. In Caruso v. Blockbuster-Sony Music,193 F.3d 730 (3rd Cir. 1999) future Justice  Samuel Alito disregarded the stereotypes concerning the disabled and held wheel chair users had a right to access a lawn area on a dangerous slope in an outdoor theater

STATEMENT OF FACTS

Plaintiff will rely herein on Plaintiffs' Statement of Materials Facts Not in Dispute, and the Exhibits referenced therein, which are being filed simultaneously with this Brief. This Statement is a summary of facts given in order to place the following Legal Arguments in proper context.

Plaintiff Joseph Masci is a qualified disabled person under the ADA. He was born with two complete legs with partially formed feet he can use to brace himself and stand for short periods. He has one fully formed arm with partially formed hand he can use to pinch and hold things; and one half arm with small elbow. He utilizes artificial limbs that can be removed when needed. Six Flags Great Adventure is a theme park open to the public, owned by Defendant Six Flags Theme Parks, Inc. ("Six Flags"), and is located in Jackson Township, Ocean County, New Jersey.

On April 13, 2012, Joseph Masci, who was fourteen years old at the time, returned to Six Flags' theme park with his family during the spring holiday. On that day, Joseph was shocked and humiliated to learn Six Flags was denying him access to park rides he previously enjoyed without restriction or incident. Employees of Six Flags informed him and his family that, due to an accident that occurred at another park the year before, Six Flags had adopted a significantly

more restrictive policy that requires all patrons to have at least "one fully functional hand" and at least "one fully functional foot" to participate on the rides.

Six Flags' new policy is not consistent with the policies of many other theme parks such as Disney World and Universal Studios, the latter of which Joseph has attended and accessed equivalent rides. The new policy is also inconsistent with Joseph's actual past experience at Six Flags. He had already demonstrated his ability to use those rides without incident or harm to himself or others. As the 2010 and 2011 Special Access passes show, Six Flags previously determined that Joseph could safely access all Six Flags rides with the exception of El Toro and Nitro.

As a place of public accommodation, Six Flags is subject to the New Jersey Law Against Discrimination ("LAD") and the federal Americans with Disabilities Act ("ADA"). On the day in question, Six Flags violated these discrimination laws by refusing Joseph access to rides he was physically able to ride in comfort and safety. Six Flags did not take account of Joseph's individual medical condition, or his specific physical strengths and abilities, or the fact that he has two fully formed legs and one fully formed arm, with partially formed feet and partially formed hand, that can be used to hold on and brace himself. Six Flags also failed to perform a ride-by-ride analysis and

instead issued blanket restrictions to prohibit certain disabled persons from moderate and even mild rides.

Six Flags attempts to justify its actions by citing service bulletins issued by the manufacturer of the rides. This justification fails for multiple reasons. The bulletins are not supported by scientific analysis and contain mere unsupported conclusions. Moreover, Six Flags' prohibitions go far beyond the recommendations in the service bulletins. Six Flags barred Joseph Masci from moderate and mild rides not mentioned in the bulletins. For the "thrill" rides actually mentioned in the bulletins, Six Flags issued more restrictive wording than that stated in the bulletins.

## Legal Argument One

**SIX FLAGS EXCLUSION OF THE RIDES TO JOSEPH MASCI BASED ON A SAFETY THREAT WAS NOT BASED ON SCIENTIFIC OBJECTIVE PROOF BRAGDON V. ABBOTT, 524 U.S. 624 (1998).**

### Case Law

The United Supreme Court in <u>Bragdon v. Abbott, 524 U.S. 624,649-50 (1998)</u> ruled that to exclude a disabled person based on safety the risk must be based on scientific objective principles not on a good faith subjective view of the defendant. Justice Kennedy wrote:

> The existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who refuses the treatment or accommodation, and the

risk assessment must be based on medical or other objective evidence. Arline, supra, at 288, 107 S.Ct., at 1131; 28 CFR §36.208(c) (1997); id., pt. 36, App. B, p. 626. As a health care professional, petitioner had the duty to assess the risk of infection based on the objective, scientific information available to him and others in his profession. His belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability. To use the words of the question presented, petitioner receives no special deference simply because he is a health care professional. It is true that Arline reserved "the question whether courts should also defer to the reasonable medical judgments of private physicians on which an employer has relied.'' 480 U.S., at 288, n. 18, 107 S. Ct., at 1131, n. 18. At most, this statement reserved the possibility that employers could consult with individual physicians as objective third-party experts. It did not suggest that an individual physician's state of mind could excuse discrimination without regard to the objective reasonableness of his actions… Our conclusion that courts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments does not answer the implicit assumption in the question presented, whether petitioner's actions were reasonable in light of the available medical evidence.

As explained by the Third Circuit in an opinion penned by Judge

Fuentes joined by future Justice Alito

A "direct threat" exists when there is a "significant risk to the health or safety of others that cannot be eliminated by a modification of polices, practices, or procedures or by the provision of auxiliary aids or services." 42 U.S.C. § 12182(b)(3) (emphasis added).[6] As the Supreme Court has stated, the exception can only be invoked where a risk is significant: "[b]ecause few, if any, activities in life are risk free... the ADA do[es] not ask whether a risk exists, but whether it is significant." Bragdon, 524 U.S. at 649. Thus, courts and entities deciding whether to exclude the disabled must rely on evidence that

"assess[es] the level of risk" for the "question under the statute is one of statistical likelihood." Id. at 652.

To determine the existence of a significant risk, the Supreme Court in School Board of Nassau County v. Airline directed courts to make factual findings concerning the following four factors:(a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties) and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm. <u>480 U.S. 273</u>, 288 (1987) (internal quotations and citation omitted). These findings must be based on "medical or other objective evidence," with special deference to the views of public health.

The disposition in Bragdon follows from Congress' intent that the ADA's prohibitions on disability discrimination require an individualized determination as to the significance of risk underlying the direct threat exception, both by entities evaluating disabilities and by courts judging the actions of those entities:

A person with a disability must not be excluded... based on stereotypes or fear. Nor may a decision be based on speculation about the risk or harm to others. Decisions are not permitted to be based on generalizations about the disability but rather must be based on the facts of an individual case... The purpose of creating the `direct threat' standard is to eliminate exclusions which are not based on objective evidence about the individual involved. H.R. Rep. No. 101-485(III), at 45 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 468 (emphasis added); see also <u>Holiday v. City of Chattanooga, 206 F.3d 637</u>, 643 (6th Cir. 2000) (holding that a district court erred in accepting a physician's report about the abilities of an HIV-positive police officer applicant where "there [was] no indication that the physician conducted the individualized inquiry mandated by the <u>ADA. Doe v. County of Centre, Pa 242 F. 3d 437, 447-448 (3rd Cir. 2001)</u>.

To show that a direct threat exists, a public accommodation must make

an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices or procedures or the provisions of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 36.208. This determination "must be based on actual risks and not on mere speculation, stereotypes, or generalizations." 28 C.F.R. § 301(b). Further, the requirement of an individualized assessment requires that the public accommodation look into each particular circumstance to determine "what modifications, if any, [are] plausible to accommodate Plaintiff's disability." Shultz By and Through Shultz v. Hemet Youth Pony League, Inc., 943 F. Supp. 1222, 1225 (C.D. Cal. 1996).

B) The Applicable Regulations:

The federal regulations support Justice Kennedy

28 C.F.R. § 36.301(a)-(b), provides that a public accommodation may impose legitimate safety requirements that are necessary for safe operation.  Equally important the second sentence of 28 CFR § 36.301(b). that provides, "safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." This sentence is analogous to the concept of "direct threat," which is found in title II of the ADA at 42 U.S.C. § 12182(b)(3) and in title I of the ADA at 42 U.S.C. § 12111 (3). "Direct threat," is

not a concept that you see in title III of the ADA, but nevertheless the second sentence of 28 C.F.R. § 36.301(b) arguably seems to be referring to <u>Chevron, U.S.A. Inc. v. Echazabal, 536 U.S. 73 (2002)</u>, which held that any direct threat defense has to be based on a reasonable medical judgment relying on the most, a reasonable medical judgment relying on the most current medical knowledge and/or the best available objective evidence.

### LEGAL ARGUMENT TWO

**SIX FLAGS HAS THE BURDEN TO PROVE WITH OBJECTIVE SCINTIFIC OR ENGINEERING EVIENCE THIS AFFIRMATIVE DEFENSE OF A DIRECT THREAT.**

As the Court explained in <u>Doe v. Deer Mount Air Day Camp, 682 F. Supp. 2d 324,347 (S.D. N.Y. 2010).</u> A plaintiff like Adam is "not required to prove that he [ ] poses no risk." Lovejoy-Wilson, 263 F.3d at 220 (quoting H.R.Rep. No. 101-485, pt. 3, at 46, U.S.Code Cong. &Admin. News 1990, pp. 445, 469). In contrast, a defendant "asserting a 'direct threat' as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others." <u>Lockett v. Catalina Channel Express, Inc., 496 F.3d 1061, 1066 (9th Cir.2007)</u> (citing Bragdon, 524 U.S. at 649-50. To survive summary judgment, Defendants have the responsibility to present the court with objective, medical evidence—such as reliable medical guidelines, literature, or expert testimony—

13

to establish that their direct threat assessment was reasonable. See,
e.g., Bragdon, 524 U.S. at 650-54.

### LEGAL ARGUMENT THREE

**THE DEFENTANT HAS INTROUDED NO CREBITABLE OBJECTIVE ENIGEERNING OR SCIENTIFIC EVIDENCE THAT THE RISKS OF THE NON SWISS RIDES POSE A SIGNIFICANT RISK TO THE HEALTH AND SATETY OF JOSEPH MASCI OR OTHERS.**

Six Flags has presented no objective scientific or engineering evidence to sustain its heavy burden, that permitting Joseph Masci to utilize its rides would pose a significant risk to his health or the general public.

a)    Six flags reliance on Mr. Scott.

Mr. Scott is not qualified as an expert in regard to amusement being only an architect not an engineer or physicist. He is not qualified to render an opinion regarding the G forces in an amusement ride and its effect on the human body or a person who uses a ride. He does not make any engineering analysis. Mr. Scott also does not render an opinion in regard to any codes or industry standards. His report only cites the law and regulations that safety is a defense to exclusion.  It is respectfully submitted, these opinions are not admissible as expert evidence, in that it a legal not scientific opinion.  The report is quite curious in that it contains pictures with Palm Trees which are not native to New Jersey. Finally, the report only makes reference to the Swiss high risk rides not the 30 some rides that Joesph Masci is exclude from. Mr. Scott adds nothing to this case.

Likewise, the lay opinion of the in house employees contain no creditable evidence. First, we do not know what type of engineers they are. Are they electrical or chemical engineers?  Are they qualified to render any creditable opinion in regard to G forces.  We can only speculate. Even if qualified they produce no evidence in regard to same. What are the G forces etc. They do not cite any codes or industry standards.

b)    The manufactures of the non - Swiss rides apparently do not support Six Flags position since defendant has not supplied these rides' manufacturer's operating manual. This lack of reliance speaks volumes in light of Six Flags obligation to follow the manufacturer's operating manual. N.J.A.C. sec 5:14A-9.34

c)    The defendant finds no support in the standards developed by the ASTM Committee of Amusement Rides and Devices. Thou Six Flags relies on the ASTM in its certifications. The ASTM offers no support to defendant. The ASTM only has vague statements of safety to the disabled and contains no provisions to exclude the disabled. Ex 6

d)    Six Flags can take no comfort in its competition. Apparently, Disney does not exclude the disabled   and Universal only has some restrictions on some. Ex3.

e)    Six Flags can take no comfort in the history of use by Joseph Masci in having no accidents since used of the park.

f)   Six Flags can take any comfort in the history of the parks which opened in 1959. It has presented no evidence of any injuries on the mild to moderate rides with patrons' with four limb congenital deficiencies.

g)   Six Flags cannot take any comfort in logic in that they do not exclude patrons who pose a much higher risk of danger than plaintiff. In the majority of mild to moderate rides small children are allowed to ride if with a responsible person. In addition, Six Flags permits wheelchair uses notwithstanding that wheelchair users who are quadriplegics has less use of their limbs than plaintiff. Obviously, small toddlers and disabled who do not use of their limbs pose a much greater risk than plaintiff who has use of his limbs.

### LEGAL ARGUMENT FOUR

**SUMMARY JUDGMENT IS APPROPRIATE IN REGARD TO THE MILD TO MODERATE RIDES IN THAT SIX FLAGS FAILED TO PRESENT ANY OBJECTIVE EVIDENCE THAT THE INCLUSION OF PLAINTIFF WOULD CAUSE A DIRECT THREAT TO HIM OR THE GENERAL PUBLIC.**

Summary judgment is proper, in that Six Flags have offered no objective proof that the inclusion of Joseph Masci in the mild to moderate, constituted a direct risk. Doe v. Dean Mountain Day Camp, 682 F. Supp.2d, 344 (S.D. N.Y. 2010) (granting summary judgment to a child at a camp because he suffered from HIV because of lack of objective evidence that the child constituted a direct threat to the public) and   Anderson v. Little League Baseball, Inc. 794 F. Supp 342, 346 ( D. Ariz. 1992)(Granting a  temporary restraining order

against the Little League   for forbidding a coach who uses a

wheelchair to coach on the field.)

Consequently, Joseph Masci it is respectfully submitted that Joseph

Masci should be granted summary judgment to the following rides;

**Ex 1.**
1.Air Jumbo. Gentle circular w/s up/down
2.Air Safari. Gentle circular w/s up/down Mild
3.Big Wheel. Circular  Mild
4.Blackbeard's  train family coaster w/gentle drops Moderate.
5.Bugaboo. Gentle turns.  Mild
6.Bugs Bunny Barnstormer. Circular motion   Moderate.
7.Bugs Bunny Carousel Cir w/mild up/down Mild
8.Bugs Bunny Ranger Pilots. Up/down motion   Moderate.
9.Carousel slow Cir w/mild up/down   Mild
10.Congo Rapids family raft ride   Moderate.
11.Daffy's Deep Diver. Slow moving cir.  Mild
12.Daffy's Hot Air Balloons. Rise   Moderate.
13.Déjà vu. Quick circulating motion  Moderate.
14.Enchanted Tea Cups. Quick cir motion.   Moderate
15.Fender Benders. Turns and bumps   Moderate
16.Foghorn Stagecoach. Gentle turns   Mild
17.Houdini's Great Escaped. Up/down motion Moderate.
18.Jolly Roger Cir up /down  Moderate
19.Jumpin' Joey. Mild up/down Mild
20.Parachute Training. Sudden drop   Moderate.
21.Pepe' Lepew's. Gentle circular ride.  Mild
22.Porky Pig's Camp. Circular  Mild
23.Raja's Rickshaws. Gentle circular ride  Mild
24.Road Runner Railway. Family coaster  Moderate.
25.Safari Off Road Adventure. Permitted  Mild
26.Safari Tours. Gentle turns
27.Safari Tours. Gentle turns  Mild
28.Saw Mill Log Flume raft ride   Moderate.
29.Seaport Railway, child's ride w/gentle turns  Mild
30.Sky Zooma. Gentle cir ride.  Mild
31.Skyway. Cable track  Mild
32.Soaring Eagle . Cable track.   Moderate.
33.Splashwater Oasis. Permitted  Mild
34.Swashbuckler  Moderate.
35.Tango family ride with cir. and spinning motions. Moderate.
36.Taz's Tornado. Slow moving cir. ride Mild
37.The Buccaneer. Swings side to side Moderate.

38.Wile E. Coyote Canyon Blaster. Cir. up/down  Moderate.

---

### LEGAL ARGUMENT FIVE

### SIX FLAGS MOTION FOR SUMMARY JUDGMENT CONCERNING RIDES 1 thru 38 SHOULD BE DENIED FOR THE REASONS STATED IN THE PREVIOUS AGRUMENTS.

It is respectfully submitted for the reasons stated above in regard to rides 1-38 in support of plaintiffs' motion for summary judgment Six Flags motion should be denied. Six Flags have presented no credible objective evidence that allowing Joseph Masci to patronize the Six Flags rides 1 thru 38 would pose a significant risk of harm.

### LEGAL ARGUMENT SIX

### SUMMARY JUDGMENT SHOULD BE GRANTED IN THE HIGH THRILL RIDES IN WHICH THE SWISS MANUFACTURAL DID NOT ISSUE A SERVICE BULLENTIM. SPECIALY, THE DARE DEVIL DIVE RIDE 41;  El TORO RIDE 42; GREAT AMERICAN ROAD RACE RIDE 43; KINGDAKA RIDE 45; ROLLING THUNDER RIDE 47; RUNAWAY A MINE TRAIN RIDE 48; SKULL MOUNTAINRIDE 49;SKY SCREAMER RIDE 50; SLINGSHOT RIDE 51; THE DARK KNIGHT RIDE 53; AND THE TWISTER RIDE 54.IN ADDITION, SIX FLAGS MOTION SHOULD BE DENIED.

As in the mild to moderate rides, Six Flags has presented no evidence to satisfy its burden, that allowing Joseph Masci to use these rides would cause a significant risk of injury to him or the public. Bragdon v. Abbott, 524 U.S. 624, 649-50 (1998) and 28 CFR §

18

<u>36.301(b).</u> Consequently, it is respectfully submitted that summary judgment should for the following rides: The Dare Devil drive. Ride 41; El Toro. Ride 42; Great American Road Race. Ride 43; Kingdaka. Rine 45; Rolling Thunder Ride 47; Runaway a Mine Train Ride 48; Skull Mountain ride. Ride 49; Sky Screamer Ride 50; Slingshot. Ride 51; The Dark Knight. Ride 53; and The Twister. Ride 54.  For the same reasons, Six Flags motion for summary judgment should be denied.

## LEGAL ARGUMENT SEVEN

### PLAINTIFF SHOULD BE GRANTED SUMMARY JUDGMENT FOR THE FOLLOWING SWISS RIDES: BATMAN RIDE 39; BIZARRO RIDE 40; Nitro 46; SUPERMAN ULTIMATE RIDE 52; IN THE BOLLIGER SERVICE BULLENTIN PERMITS INDIVUALS WITH THE TYPE OF PLAINTIFS" DISABILITY IF THE PROSTHESIS IS REMOVED. SIX FLAGS HAS PRESESENTED NO OBJECTIVE TO PROVE THE SERVICE BULLETIN IS WRONG.

Despite the defendants alleged reliance on the Bolliger instructions it excludes Masci from the above rides.Ex1. The Bolliger instructions indicates that a patron who has two functional lower limbs can ride, if the prosthesis is removed. Declaration of Turtora Exhibit A. Defendant presents no objective evidence why the Bolliger instructions are not being followed.

## LEGAL ARGUMENT EIGHT

**EVEN IF THE PLAINTIFF MISREADS THE BOLLINGER' INSTRUCTION, SIX FLAGS CANNOT VIOLATE THE ADA BY RELYING ON A DISCRIMINTARY POLICY BY THE MANUFACTURER. THE BOLLINGER REPORT IS INADMISSIBLE HEARSAY TO PROVE THE RIDES POSED A THREAT.   SECOND, THE BULLETINS ARE NET OPINIONS   NOT   PROVIDING   ANY   OBJECTIVE ENGEERING ANALSIS AS REQUIRED BY THE ABBOTT STANDARD.   FINALLY, TO BLINDLY FOLLOW NEW JERSEY LAW,    CONTRARY TO THE ADA, IS A VIOLATION OF THE SUPREMCY CLAUSE.**

It is respectfully submitted, that summary judgment should be granted to plaintiff in regard to the Swiss rides in that the Bollinger bulletins  are inadmissible hearsay in regard to whether the use of the rides by Masci pose  a significant risk of harm. Obviously, plaintiff has a right to cross exanimate the Swiss. The bulletins are net opinions not stating an objective engineering analysis as required by Bragdon v. Abbott, 524 U.S. 624 (1998).

Finally, under the Supremacy Clause Six Flags cannot blindly rely on state law contrary to the ADA.  Barber ex rel. Barber v. Colorado Dept. of Revenue, 562 F.3d 1222 (10th Cir. 2009)

"[S]tate law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal

law, or where the state law stands as an obstacle to the
accomplishment of the full purposes and objectives of Congress."
Silkwood v. Kerr-Mcgee Corp., 464 U.S. 238, *104 S. Ct. 615, 78 L. Ed.
2d 443* (U.S. 1984).

"Obstacle preemption applies "where state law 'stands as an
obstacle to the accomplishment and execution of the full purposes and
objectives of Congress.'" Freightliner Corp. v. Myrick, 514 U.S. 280,
287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995) (quoting Hines v.
Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)). The
Supreme Court has found state-law claims preempted under obstacle
preemption where a state-law claim "interferes with the methods by
which the federal statute was designed to reach [its] goal." Gade v.
Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 103, 112 S. Ct. 2374, 120
L. Ed. 2d 73 (1992) (internal quotation marks and citation omitted).
We have explained that a decision about obstacle preemption requires
the court independently to consider national interests and their
putative conflict with state  interests. . . . [P]reemption under [an
obstacle preemption] theory is more an exercise of policy choices by a
court than strict statutory construction. Abbot v. Am. Cyanamid Co.,
844 F.2d 1108, 1113 (4th Cir. 1988). Obstacle preemption can apply not
only to positive enactments of state law but also to state tort
claims. See, e.g., Geier v. Am. Honda Motor Co., 529 U.S. 861, 120 S.
Ct. 1913, 146 L. Ed. 2d 914 (2000) (holding that negligence action

21

against a manufacturer was preempted because it conflicted with a federal agency standard).” <u>Equal Rights Ctr. v. Niles Bolton Assocs.</u>, 602 F.3d 597 (4th Cir. Md. 2010).

"The principal purpose of the ADA is to "(1) . . . provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities [and] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)… Furthermore,  compliance with the ADA … is "nondelegable" in that an owner cannot "insulate himself from liability for… discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party." See <u>Walker v. Crigler, 976 F.2d 900, 904 (4th Cir. 1992)</u>. Under these principles, it is clear that, like the securities laws at issue in Baker, Watts & Co., the regulatory purposes of the FHA and ADA would be undermined by allowing a claim for indemnity.” <u>Equal Rights Ctr. v. Niles Bolton Assocs.</u>, 602 F.3d 597 (4th Cir. Md. 2010).

""Turning to the Wisconsin spacing requirement, the court finds that the explicit terms of Subsections 62.23(7)(i)1 & 2r specifically apply to community living arrangements for groups of developmentally disabled adults. Thus, the subsections classify people on the basis of disability. The laws impose a 2500-foot spacing requirement on

community living arrangements for the developmentally disabled. This spacing requirement substantially limits meaningful access to housing for the developmentally disabled. Thus, the subsections are an obstacle to the accomplishment and exclusion of the full purposes and objectives of Congress and to that extent they are preempted… Nothing in the record establishes that the Wisconsin spacing provision qualifies as an exemption under either law and there is nothing in the record to establish a justification for the law. There is not a scintilla of evidence that disabled people present a public health or safety threat to other residents of a community. See Bangerter v. Orem City Corporation, 46 F.3d 1491, 1503 (10th Cir. 1995). And, even though the State argues that the spacing requirement protects disabled people by preventing them from being resegregated into enclaves of group homes, benign intentions on the part of lawmakers cannot justify laws which discriminate against protected groups. See International Union, United Automobile Aerospace and Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc., 499 U.S. 187, 197-200, [*955] 111 S. Ct. 1196, 113 L. Ed. 2d 158 (1991); Larkin v. State of Michigan Department of Social Services, 89 F.3d 285, 290-92 (6th Cir. 1996)." Oconomowoc Residential Programs v. City of Greenfield, 23 F. Supp. 2d 941, 954-955 (E.D. Wis. 1998) (emphasis added).


**LEGAL ARGUMENT NINE**

**IT IS RESPECTFULLY SUBMITTED THAT SUMMARY JUDGMENT SHOULD BE GRANTED TO PLAINTIFF IN THAT SIX FLAGS FAILED TO CONDUCT AN INDIVIDUAL ASSEMENT OF JOSEPH MASCI**

To show that a direct threat exists, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices or procedures or the provisions of auxiliary aids or services will mitigate the risk. 28 C.F.R. § 36.208. This determination "must be based on actual risks and not on mere speculation, stereotypes, or generalizations." 28 C.F.R. § 301(b). Further, the requirement of an individualized assessment requires that the public accommodation look into each particular circumstance to determine "what modifications, if any, [are] plausible to accommodate Plaintiff's disability." Shultz By and Through Shultz v. Hemet Youth Pony League, Inc., 943 F. Supp. 1222, 1225 (C.D. Cal. 1996).Doe v. County of Centre, Pa 242 F.3d 437,447-448 (3rd Cir.2001). In this case the failure not make an individualized assessment is material in that Masci has functional legs and can grip with his hand.

**LEGAL ARGUMENT TEN**

**SIX FLAGS IS IN VIOLATION OF THE NJLAD AND HAS NO AFFIRMATIVE DEFENSE UNDER A**

### REASONABLE PROBABILY OF SERVIOUS HARM. SEC 13:13-4.8

As under federal law Six Flags violates the NJLAD by denying Joseph Masci access to its rides.  NJSA 10:5-12 Six Flags can take no relief in a serious harm defense. New Jersey also calls on a defense based on objective evidence. N.J.A.C. sec 13:13-4.8 provides reasonable probability of serious harm. (a) Nothing in this subchapter shall be construed as requiring an owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation to permit a person with a disability to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of that public accommodation if to do so creates a reasonable probability of serious harm to the person with a disability, or to others, that cannot be mitigated with reasonable accommodation.(b) In determining whether providing a person with a disability with access to a public accommodation poses a reasonable probability of serious harm to that individual, or to others, that cannot be mitigated with reasonable accommodation, an owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain the probability that the serious harm will actually occur and whether reasonable modifications of policies, practices, or procedures will mitigate the

25

probability of serious harm.(c) An owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation may impose legitimate safety requirements that are necessary for the safe operation of the facility. Such safety requirements shall be based on actual risks and not on mere speculation, stereotypes, or generalizations about people with disabilities. For the same reason has discussed throughout its brief summary judgment should be granted to plaintiff under the NJLAD.

### LEGAL ARGUMENT ELEVEN

### AS A MATTER OF LAW SIX FLAGS IS IN VIOLATION OF 42 USC SEC 12182.

For the reasons as expressed throughout the brief the Six Flags is in violation of 42 USC sec 12182.

### LEGAL ARGUMENT TWELVE

### THE RELIANCE ON THE CASTELAN V. UNIVERSAL STUDIOS, INC IS MISPLACED.

Six Flags reliance on the Castelan v. Universal Studios Inc, 2014 WL 210754 (C.D. Cal . Jan.10, 2014) case is misplaced. First, the matter only involved one high thrill ride. In the Instant matter, Joseph Masci is seeking to ride close to forty rides, the majority of rides , which by Six Flags admission, are mild to moderate. Second, the

plaintiff in California has no legs while Masci complies with the instructions of the Swiss manufacture. Third, the case involved a failure to design properly while the instant case access to the rides. Fourth, the Court does not discuss the Abbott case or the Supremacy clause. It is respectfully suggested that the case is immaterial and in some respects rightfully decided.


Respectfully submitted,

s/A. Brady
_____
Anthony J. Brady Jr.